UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America ex rel. Roosevelt Grant, | ) ) ) | No. 12 C 8907 |
| Petitioner, | ) ) | |
| v. | ) ) ) | Judge Thomas M. Durkin |
| Allan Martin, Warden, Shawnee Correctional Center, | ) ) ) ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Roosevelt Grant, a state prisoner serving concurrent prison terms for armed robbery, possession of a stolen vehicle, and aggravated battery, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. R. 1. Respondent Warden Allan Martin answered the petition, arguing that the petition should be dismissed as untimely because Grant failed to comply with the one-year statute of limitations imposed by § 2244(d)(1) or, alternatively that the petition should be denied because the two claims raised in the petition are procedurally defaulted. R. 12. The petition is untimely, and the claims are procedurally defaulted. The petition is dismissed, and a certificate of appealability is denied.

**Procedural History**

At Grant's 2006 jury trial, the State presented the following evidence:[1] Grant robbed a man of his wallet at gunpoint and drove away in a stolen car. R. 12, Resp.'s Mot. to Dismiss, Exh. A at 1-6; Exh. K at 2. A little over an hour later, two police officers observed the stolen car and approached on foot. *Id.* At the direction of one of the officers, the man in the passenger seat opened his door. *Id.* While the officer was standing behind the open door, Grant, who was driving, shifted into reverse, accelerated backwards, and dragged the officer for 20 or 30 feet before he broke free of the door. *Id.* Grant then drove away. *Id.* When officers later arrived at Grant's home to question him, Grant attempted to flee, and the officers handcuffed him. R. 12, Exh. A at 6. On Grant's person, they found a "jiggler key," a criminal tool used to start the ignition of different types of cars. *Id.* At trial, two of the officers, the man who Grant robbed, and the passenger in Grant's car identified Grant as the perpetrator of the various offenses committed that night. *Id.*, Exh. A at 1-6.

After considering the evidence, a Cook County jury convicted Grant of armed robbery, possession of a stolen motor vehicle, and aggravated battery. *Id.*, Exh. A at 1. He was then sentenced to concurrent terms of twenty-five years, eight years, and four years of imprisonment, respectively. *Id.* On direct appeal to the Illinois Appellate Court, Grant challenged: (1) the sufficiency of the evidence to prove him guilty beyond a reasonable doubt of aggravated battery; and (2) his armed robbery

---

[1] 28 U.S.C. § 2254(e)(1) cloaks the state court's factual findings in a presumption of correctness. That presumption may be rebutted only by clear and convincing evidence. *Id.* Grant has not attempted to rebut § 2254(e)(1)'s presumption. Accordingly, the state court's factual findings are presumed correct.

sentence as excessive. *Id.*, Exhs. A at 1, B, C, & D. The state appellate court affirmed Grant's convictions and sentences on February 26, 2009, *id.*, Exh. A, and Grant declined to seek discretionary review in the Illinois Supreme Court, *id.*, Exh. E; *see also* R. 1 at 2.

After his unsuccessful direct appeal, Grant pursued state postconviction relief. On March 23, 2009,[2] Grant filed a pro se postconivction petition, alleging that: (1) the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose certain exculpatory evidence—a police report on a Saturn "jiggler" key found in Grant's possession and a police detective's notes and general progress report containing a description of the armed offender; and (2) trial counsel was ineffective for failing to (a) object at trial to the State's aforementioned *Brady* violations, and (b) call Herbert Graham, Grant's uncle, as an alibi witness; and (3) appellate counsel was ineffective for failing to raise as issues on his direct appeal (a) his *Brady* claim, and (b) trial counsel's ineffectiveness for failing to object to the State's *Brady* violations at trial. R. 12, Exh. F. After the state circuit court dismissed the petition as frivolous and patently without merit, Grant appealed, presenting one claim to the state appellate court: the circuit court erroneously dismissed his claim that trial counsel was ineffective for failing to call Herbert Graham as an alibi witness. *Id.*, Exhs. G, H, I, & J. The state appellate court

---

[2] Pursuant to Illinois' "mailbox rule," Grant's postconviction petition is deemed filed on March 23, 2009, the date he certified that he mailed the petition. *See People v. Saunders*, 633 N.E.2d 1340, 1341-43 (Ill. App. 2d Dist. 1994); *see also Ray v. Clements*, 700 F.3d 993, 1004-06 (7th Cir. 2012).

rejected this argument, concluding that Grant forfeited this claim on postconviction review because it could have been raised in his direct appeal. *Id.*, Exh. K. Grant's ensuing pro se petition for leave to appeal ("PLA") in the Illinois Supreme Court argued that (1) trial counsel was ineffective for failing to call Graham as an alibi witness; and (2) the state appellate court erred in finding that claim forfeited in his postconviction appeal. *Id.*, Exh. L. The Illinois Supreme Court denied Grant's PLA on September 28, 2011. *Id.*, Exh. M.

On November 3, 2012, Grant mailed his § 2254 petition to this Court, and it was file-stamped by the Clerk's Office on November 7, 2012.[3] The petition raises two claims: (1) the State violated *Brady* by withholding exculpatory evidence; (2) appellate counsel on direct appeal was ineffective for failing to argue that trial counsel was ineffective for failing to object to the State's *Brady* violation. R. 1 at 5.

## Analysis

**I.    Grant's Petition Is Untimely.**

Section 2244(d)(1) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that a "1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State Court." 28 U.S.C. § 2244(d)(1). This limitation period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

---

[3]   The envelope in which Grant's § 2254 petition was mailed is postmarked November 3, 2012. R. 1.

4

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* § 2244(d)(1)(A)-(D).

The Warden argues that because Grant's petition was filed more than a year after the conclusion of direct review, § 2244(d)(1)(A), the petition is untimely.[4] Under § 2244(d)(1)(A), Grant's one-year limitations period began to run on "the date on which the judgment [of conviction] became final by the conclusion of direct review to the expiration of the time for seeking such review."

Grant's state court conviction became final on April 2, 2009, 35 days after the state appellate court's February 26, 2009 judgment, when the time for filing a petition for leave to appeal the state appellate court's affirmance of his convictions and sentences expired. *See* Ill. Sup. Ct. R. 315(b) (allowing 35 days to file petition for leave to appeal following appellate court's judgment); *Owens v. Boyd*, 235 F.3d 356, 357 (7th Cir. 2000); *see also Gonzalez v. Thaler*, 132 S. Ct. 641, 654 (2012) (where habeas petitioner "did not appeal to the State's highest court, his judgment

---

[4] Grant does not allege a state-created impediment to filing, assert a newly recognized and retroactively applicable constitutional right, or point to a factual predicate of a claim that could have been discovered through the exercise of due diligence. Accordingly, §§ 2244(d)(1)(B), (C), and (D) are inapplicable.

5

became final when his time for seeking review with the State's highest court expired"). Grant's properly filed March 23, 2009 state postconviction petition immediately tolled the limitations period under § 2244(d)(2), *see Wilson v. Battles*, 302 F.3d 745, 747 (7th Cir. 2002), and the limitations period remained tolled until September 28, 2011 when the Illinois Supreme Court denied Grant leave to appeal from the state appellate court's order affirming the denial of postconviction relief, *see also Lawrence v. Florida*, 549 U.S. 327, 332 (2007) (providing for no tolling while certiorari petition following conclusion of state postconviction proceedings was pending); *Tucker v. Kingston*, 538 F.3d 732, 735 (7th Cir. 2008) (indicating no tolling available during 90-day period where habeas petitioner could have, but did not, seek certiorari following conclusion of state postconviction proceedings).

It is at this point on the limitations timeline that the parties diverge. The timeliness of Grant's § 2254 petition turns on the date that his petition is deemed filed. The Warden and Grant disagree on that date. The Warden contends that Grant's petition should be deemed filed on November 7, 2012 because that is the date on which the Clerk of the Court file-stamped the § 2254 petition. The Warden acknowledges that the envelope in which Grant mailed his petition to this Court is postmarked November 3, 2012, R. 1, but he argues that Grant is not entitled to the benefit of the mailbox rule because he did not comply with Rule 3(d) of the Rules Governing Section 2254 Cases. Grant, the Warden says, did not aver whether, or when, he deposited the petition in the prison's mailing system with postage prepaid. Pursuant to Rule 3(d), in order to receive the benefit of the mailbox rule, an inmate

6

must comply with these requirements. Rule 3(d) ("A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing . . . . Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or by a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid."); *see also United States v. Craig*, 368 F.3d 738, 740-41 (7th Cir. 2004) (requiring strict compliance with similarly-worded "mailbox rule" in Fed. R. App. P. 4(c)).

Grant suggests a different date than the Warden's proposed November 7, 2012 date. He urges the Court to deem his petition filed on September 20, 2012, the date on a letter he sent to the Court. R. 3. In that letter, Grant wrote that he was "filing a Petition for a Writ of Habeas Corpus" and informed the clerk's office that if it "check[ed] with the Prisoner Correspondent['s] Office[,] [it would] discover that [he] already sent that office the . . . filing fee . . . ." *Id.* Grant also requested that the Clerk issue summons on the Warden. *Id.*

The Court declines to deem Grant's § 2254 petition filed on September 20, 2012. The letter, for one, while dated September 20, 2012, provides no indication of whether, or when, it was placed in the prison's mail system with postage prepaid. *See* Habeas Rule 3(d). Without that indication, the Court must find the letter filed on the date that it was filed-stamped by the Court—November 7, 2012—rather than on the date indicated on the letter.

7

Even more importantly, Grant's letter did not commence his § 2254 proceedings. "A 2254 case is commenced on the date the petition is filed." *Holman v. Gilmore*, 126 F.3d 876, 880 (7th Cir. 1997); *id* ("[A] case is commenced by filing a petition seeking substantive relief."); *see also Woodford v. Garceau*, 538 U.S. 202, 208 (2003) ("[A] habeas suit begins with the filing of an application for habeas corpus relief—the equivalent of a complaint in an ordinary civil case."). Preliminary documents filed prior to a § 2254 petition, like Grant's September 20, 2012 letter, are insufficient to initiate § 2254 proceedings and consequently do not factor into whether Grant's later-filed habeas petition is timely. *Cf. Holman*, 126 F.3d at 879 ("A motion . . . for appointment of counsel is a prelude to a collateral attack . . . but is not itself a collateral attack."); *Fierro v. Cockrell*, 294 F.3d 674, 681 (5th Cir. 2002) (motion for authorization to file successive petition "is merely a preliminary motion that does not itself initiate habeas proceedings, [so] it cannot satisfy the statute of limitations established under [2254]").

Nor could Grant's September 20, 2012 letter constitute his 2254 petition. The letter indicated that Grant was filing a § 2254 petition, but the letter was not itself Grant's petition. "Habeas petitions must state the relief requested, specify the ground for relief, and state the facts supporting the ground for relief." *Mahaffey v. Ramos*, 588 F.3d 1142, 1144-45 (7th Cir. 2009) (citing Rule 2(c) of the Rules Governing Section 2254 Cases). Grant's September 20, 2012 letter did none of these things. Ultimately, the letter's contents did not provide a basis for this Court to grant or deny Grant habeas relief, and accordingly was not Grant's § 2254 petition.

8

In sum, the Court finds that Grant's petition was filed on November 7, 2012, and accordingly was filed 406 days after the limitations period began to run following the conclusion of state postconviction proceedings. The petition is therefore untimely under § 2244(d)(1)(A).

Nor is there any basis for equitable tolling of the limitations period. "[A] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way' and prevented timely filing." *Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *see also Griffith v. Rednour*, 614 F.3d 328, 331 (7th Cir. 2010). Nothing in the record indicates that equitable tolling would apply in this case.

Grant claims that he is actually innocent and that his actual innocence excuses his untimeliness. Long-standing Seventh Circuit precedent established that a showing of actual innocence did not excuse untimeliness under § 2244(d). *See, e.g.*, *Griffith*, 614 F.3d at 331; *Escamilla v. Jungwirth*, 426 F.3d 868, 872 (7th Cir. 2005). The Supreme Court, however, recently concluded to the contrary, holding that "actual innocence, if proved, serves as a gateway through which a petitioner may pass . . . [to excuse] the expiration of the statute of limitations." *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (May 28, 2013). The Court, however, reiterated the very high hurdle that habeas petitioners must clear to pass through the actual innocence gateway to excuse the statute of limitations bar: "tenable actual-innocence gateway pleas are rare," and the standard by which actual innocence

9

gateway pleas are judged is "'demanding' and seldom met." *Id.* (quoting *House v. Bell*, 547 U.S. 518, 538 (2006)). Confirming the standard for judging actual innocence gateway claims set forth in *Schlup v. Delo*, 513 U.S. 298, 329 (1995)—whether to excuse procedurally defaulted claims or claims untimely due to the expiration of the statute of limitations—the Court held that "a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin*, 133 S. Ct. at 1928 (quoting *Schlup*, 513 U.S. at 329).

Considering the evidence Grant presents in support of his actual innocence claim, the Court finds that he has failed to meet the high standard of *Schlup* and *McQuiggin*. Grant proffers new evidence in the form of a June 5, 2006 affidavit from his uncle, asserting that "on the date of [the] incident, August 13, 2004, [Grant] was home with me and could not have committed this crime in anyway [*sic*]." R. 1 at 118. The evidence presented in support of Grant's guilt at trial was ample: the testimony of four eyewitnesses identifying him as the offender and evidence that he was arrested in possession of a tool (a "jiggler" key used to start the ignitions of different types of cars) connected to his offenses. Weighed against this eyewitness testimony and strong circumstantial evidence, the affidavit of Grant's bare, belated, and potentially biased alibi witness establishes that the new evidence is not so credible, conclusive, or "strong that a court cannot have confidence in the outcome of

10

the trial."[5] *McQuiggin*, 133 S. Ct. at 1936 (quoting *Schlup*, 513 U.S. at 316) (approving of district court's evaluation and rejection of habeas petitioner's new proffered evidence in support of actual innocence-gateway claim); *see also Woods v. Schwartz*, 589 F.3d 368, 377 (7th Cir. 2009) ("[I]t is black letter law that testimony of a single eyewitness suffices for conviction even if 20 bishops testify that the eyewitness is a liar.") (quoting *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005)). Accordingly, Grant cannot excuse his untimeliness.

## II. Grant's Claims Are Procedurally Defaulted.

Even if his § 2254 petition were timely, denial of the petition is appropriate because both of the claims raised in Grant's petition are procedurally defaulted and there are no grounds for excusing the defaults. The Warden argues, and Grant concedes (correctly), that his claims are procedurally defaulted.[6] R. 1 at 14. Grant,

---

[5] Without reaching the merits of Grant's *Brady* claim, the Court notes that even if the evidence Grant alleges that the State failed to disclose were considered as part of the evidence in support of his actual innocence claim, that evidence would not alter the Court's conclusion that Grant has failed to meet the *Schlup* standard.

[6] A claim is procedurally defaulted if it was not fairly and properly presented in state court through one complete round of the State's established appeals process. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Malone v. Walls*, 538 F.3d 744, 753 (7th Cir. 2008) (habeas petitioner must "assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in postconviction proceedings") (internal quotation marks omitted). The only claim Grant preserved for federal habeas review—that trial counsel was ineffective for failing to call an alibi witness—is not presented in his § 2254 petition. *See* R. 1; R. 12, Exhs. F, H, & L. Rather, Grant's federal habeas petition presents two different claims—that the State violated *Brady* by withholding exculpatory evidence and appellate counsel was ineffective for failing to argue on direct appeal that trial counsel was ineffective for failing to object to the State's alleged *Brady* violation. R. 1 at 5, 9-14. Grant raised these claims in his postconviction petition, R. 12, Exh. F, but failed to raise them in his postconviction appeal or his postconviction PLA, *id.*

11

however, argues that review of his claims on the merits is appropriate because he can demonstrate that he is actually innocent and that the failure to consider his defaulted claims will result in a fundamental miscarriage of justice.

This Court may reach the merits of a procedurally defaulted claim if the habeas petitioner can show cause and prejudice to excuse his defaults or demonstrate that he is actually innocent. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Woods*, 589 F.3d at 373. The cause-and-prejudice exception is not applicable here because Grant makes no attempt to invoke it. Accordingly, the Court will not consider it. *See Crockett v. Hulick*, 542 F.3d 1183, 1193 (7th Cir. 2008); *Bell v. Pierson*, 267 F.3d 544, 555 n. 6 (7th Cir. 2001). Grant does advance a claim of actual innocence, but for the same reasons discussed above, the Court finds that Grant has failed to meet *Schlup*'s demanding standard for demonstrating actual innocence. The evidence Grant marshals in support of his actual innocence claim is insufficient to satisfy *Schlup*'s high bar. Indeed, it falls far short. Accordingly, the Court will not excuse Grant's procedural default of his claims.

### III.   A Certificate of Appealability Is Denied.

Rule 11(a) of the Rules Governing § 2254 Cases provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability, a habeas petitioner must make "a substantial showing of the denial of a constitutional right."

---

Exhs. H & L. Grant's failure to present these claims through one complete round of state postconviction review results in the procedural default of these claims on federal habeas review. *See Boerckel*, 526 U.S. at 845-48; *Malone*, 538 F.3d at 753.

28 U.S.C. § 2253(c)(2); *see also Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011). And where a petition is disposed of based on a procedural bar, without reaching the merits of the underlying constitutional claims, a certificate of appealability should issue only if reasonable jurists would find the adjudication of the antecedent procedural ruling "debatable." *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000); *see also Lavin*, 641 F.3d at 832. Because the untimeliness of Grant's petition is not debatable, a certificate of appealability is denied. *See Slack*, 529 U.S. at 584. ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted."). Nor is the procedural default of Grant's claims debatable. A certificate of appealability is denied on that basis as well.

## Conclusion

For the foregoing reasons, Grant's § 2254 petition is dismissed with prejudice as untimely. The Court further finds that the claims are procedurally defaulted. Finally, the Court declines to issue a certificate of appealability.

ENTERED:

*Thomas M Durkin*
Thomas M. Durkin
United States District Judge

Dated: August 21, 2013